UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AVEOS FLEET PERFORMANCE, INC.,

                        Plaintiff,

v.                                                        No. 8:11-CV-0950 (GTS/CFH)

VISION AIRLINES, INC.,

                        Defendant.

---

### AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTION
### FOR VOLUNTARY DISMISSAL OF THE ACTION

Robert E. Ganz, being duly sworn, deposes and says:

1. That he is an attorney duly licensed to practice law in New York, is admitted to the Bar of this Court, a partner in the firm of Ganz Wolkenbreit & Siegfeld LLP ("GW&S") and has acted as counsel for Vision Airlines, Inc. ("Vision").

2. I submit this Affidavit in opposition to Plaintiff's Motion for voluntary dismissal of the action and to have the Court retain jurisdiction to enforce the Settlement Agreement reached between the parties on October 21, 2013.

### Background

3. The mediation was scheduled for Monday October 21, 2013. Mediation rules require that an actual corporate representative of corporate parties be in attendance. Bill Acor, the President of Vision Airlines, was called away at the last moment to conclude an important business negotiation in Beijing, China. He, therefore, sent Mike Smith, the Vice President of Maintenance, to attend the mediation. Mr. Smith, Mr. Acor and I discussed some of the parameters of the settlement discussions on the Friday before Mr. Acor left for China.

00075286.WPD

4. From Vision's point of view, the key elements of a workable settlement were that there needed to be a gradual set of payments and there needed to be a release of the parts, which everyone agreed are still owned by Vision Airlines, from the warehouse maintained by Aveos now that Aveos, in liquidation, was no longer an operating company.

5. While there had been an inspection of the engines and parts in the summer, only a limited level of evaluation of their resaleability was able to be achieved.

6. When we arrived at the mediation, Aveos was represented by two outside counsel and no corporate representative of Aveos was present. It was represented to us that Attorney Foont was authorized to resolve the matter by Aveos, but no written statement of authority was provided and we only went forward because my client had sent a representative all the way from its Las Vegas headquarters to conduct such negotiation.

7. The negotiation did progress and, during the negotiation, we were able to talk by telephone to Mr. Acor in Beijing once, but it was 1:00 in the morning and he had just completed a full day of negotiations in China. When we called him a second time for further instructions and to provide him with feedback, he did not answer the phone, given that it was probably 3:00 or 4:00 in the morning in Beijing.

8. Mr. Smith and I did the best we could to negotiate within the parameters given by Mr. Acor. When the Agreement was signed, the parties actually mis-signed the Agreement, Mr. Smith signing for Aveos and Mr. Foont signing for Vision Airlines.

### Post-Mediation Developments

9. When Mr. Acor returned from China there was a very short window of time for the first payment and, pursuant to the negotiated terms, to bring persons to Montreal to verify that the

move from the prior warehouse (where the July inspection took place) to the present location of the engines and parts had not caused any significant damage that would make the parts more unsaleable than their condition in July revealed.

10. Mr. Acor informed me that he was involving his insurance company but that he could not meet those deadlines. I communicated that to Aveos' attorneys and, while the deadlines passed and default notices given, no specific action was taken by Aveos to enforce the Settlement Agreement and cause forfeitures of rights. Mr. Acor and I were in touch sporadically as he was trying to run his business while also involve his insurance company in moving the matter forward.

11. Mr. Acor also told me that his lending bank, IBC [International Bank of Commerce], had been informed of the settlement but was objecting on the ground that they held a lien on such engines. I communicated that assertion to Plaintiff's attorneys and, at Mr. Acor's suggestion, indicated to them that the possible resolution of the matter (which required final payment by the end of January 2014) might be accelerated if we could simply get the insurance company up to Montreal to make an evaluation so that there could be a funding of the claim.

12. However, I received a copy of a letter from the insurance company to my client which indicated that, as of November 19, 2013, the work that it would have to do in connection with such inspection would take some six to eight weeks prior to the time an insurance claim could be funded (see Letter of Aon Risk Services attached hereto as <u>Exhibit A</u>).

13. Obviously, this was not an acceptable type of delay to Aveos' representatives and I urged Bill Acor to have his insurance company accelerate the time table so that I could propose a specific set of dates to move the case toward final resolution.

14. Since that communication in mid-November, I have not been able to have a substantive conversation with Mr. Acor and, as a result, in mid-December I made a motion to withdraw as counsel.

### Vision's Request

15. It is, according to my last communication with Mr. Acor, Vision's request that we have another mediation session in which the insurance company is involved. Vision would agree that the parties maintain the settlement amount of $550,000.00 but revise the process so that the insurance company can perform what is needed at the storage site in Montreal and enable them to fund the settlement. It may very well be that the insurance company will authorize a lump sum payment to Aveos in connection with some revised deadlines, but that will have to be the insurance company's decision.

16. Vision understands that Aveos will have to be paid in stages or in full prior to the release of engines in stages or completely, but Aveos must understand also that Vision's lending bank has lien rights. I would, therefore, urge that at a rescheduled mediation the lending bank, IBC, also be offered the opportunity to attend and assert whatever rights it has for appropriate adjustment in connection with this matter.

### Conclusion

17. It is certainly unfortunate that the Settlement Agreement reached on October 21, 2013 has not been able to be effectuated, but that was not a willful determination by Vision but rather one that was caused by a variety of circumstances, including Mr. Acor being called to China and the insurance company's scheduling issues.

18. It is hoped that the Court will allow an appropriate revision of the Settlement Agreement after an additional mediation session so that the matter can be effectively settled rather than generate more litigation during any enforcement proceedings.

WHEREFORE, deponent requests Plaintiff's motion be denied and an Order be entered as justice requires, together with such other and further relief as to the Court may seem just and proper.

_____
Robert E. Ganz

Sworn to before me this
6th day of January, 2014.

_____
Notary Public