UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AVEOS FLEET PERFORMANCE, INC.,

                            Plaintiff,                    8:11-CV-0950
                                                         (GTS/CFH)
v.

VISION AIRLINES, INC.,

                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

THE FOONT LAW FIRM                          BRIAN E. FOONT, ESQ.
   Counsel for Plaintiff
11909 Reynolds Avenue
Potomac, MD 20854

CONDON & FORSYTH LLP                        JOHN MAGGIO, ESQ.
   Co-Counsel for Plaintiff
7 Times Square
New York, NY 10036

GANZ WOLKENBREIT & SIEGFELD LLP             ROBERT E. GANZ, ESQ.
   Counsel for Defendant
One Columbia Circle
Albany, NY 12203

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this diversity action filed by Aveos Fleet Performance Inc.

("Plaintiff") (Dkt. No. 28) against Vision Airlines, Inc. ("Defendant") asserting a claim of breach

of contract, is Plaintiff's motion to voluntarily dismiss its Complaint and retain jurisdiction to

enforce the parties' settlement agreement, pursuant to Fed. R. Civ. P. 41(a)(2).  (Dkt. No. 57.)

For the reasons set forth below, Plaintiff's motion is granted.

I.      **RELEVANT BACKGROUND**

     A.      **Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Complaint alleges that, because Defendant breached the terms of its Engine Technical Services Agreement with Plaintiff, Plaintiff is entitled to damages of $3,959,256.49, plus interest through the date payment is made in accordance with the Agreement, as well as prejudgment interest and costs.  (Dkt. No. 1, Attach. 1.)

     B.      **Relevant Procedural History**

By Text Order dated July 3, 2013, the Court directed the parties to submit to, and complete, mediation by October 31, 2013.  (Dkt. No. 48.)

On October 21, 2013, the parties submitted to mediation before an agreed-upon mediator, Daniel J. Hurteau, Esq., of Nixon Peabody, in Albany, New York.  (Dkt. No. 48; Dkt. No.  49; Dkt. No. 60, at ¶ 5.)  The mediation was attended by Mr. Brian Foont, co-counsel for Plaintiff. (Dkt. No. 60, at ¶ 6.)  The mediation was also attended by Defendant's Vice President of Maintenance, Mike Smith.  (Dkt. No. 52; Dkt. No. 60, at ¶ 6; Dkt. No. 60, Attach. 1, at 4.)  Both Mr. Foont and Mr. Smith represented that they had unfettered authority to settle the case, in accordance with Local Rule 83.11-5(b).  (Dkt. No. 60, at ¶ 6; Dkt. No. 71.)  After approximately six hours of uninterrupted mediation, the parties agreed upon the terms of settlement of this litigation and executed a settlement agreement.  (Dkt. No. 60, at ¶ 7; Dkt. No. 58, Attach. 1.)

In pertinent part, the settlement agreement provided as follows:

     a.      Defendant was to pay Plaintiff $50,000 by October 31, 2013.  (Dkt. No. 58, Attach. 1, at ¶ 1.)

b.     Defendant was to conduct an inspection of the parts and engines that are the

       subject of this action by November 6, 2013, to determine if they have sustained

       any material damage since they were last inspected in July of 2013.  (*Id*. at ¶ 2.)

       If Defendant notified Plaintiff of a material defect by close of business November

       6, 2013, the settlement agreement would be void; otherwise, the settlement

       agreement would be fully effective.  (*Id*. at ¶ 2.)

c.     If there was no material defect observed, Defendant agreed to pay Plaintiff

       $150,000 by November 8, 2013, after which Defendant was to take possession of

       the parts as well as a white packaged JT9D engine labeled VS4A by November

       11, 2013.  (*Id*. at ¶ 3.)  If the payment was not made by November 11, 2013,

       Defendant forfeited its rights to the white packaged JT9D engine labeled VS4A.

       (*Id*. at ¶ 7.a.)

d.     Defendant was to pay Plaintiff $100,000 on or before December 16, 2013, after

       which Defendant was to take possession of the remaining JT9D engine and parts

       by the close of business on December 20, 2013.  (*Id*. at ¶ 4.)  If the payment was

       not made by December 20, 2013, Defendant forfeited its rights to the remaining

       JT9D engines and parts.  (*Id*. at ¶ 7.b.)

e.     Defendant was to pay Plaintiff $250,000 on or before January 30, 2014, after

       which Defendant was to take possession of the CFM-56 engine (Serial # 858267)

       by close of business on January 31, 2014.  (*Id*. at ¶ 5.)  If the payment was not

       made on or before January 30, 2014, Defendant shall be deemed to have released

       its rights to the CFM-56 engine.  (*Id*. at ¶ 6.)

3

On November 8, 2013, counsel for Defendant notified counsel for Plaintiff for the first time that Defendant's lending bank, International Bank of Commerce, holds a security lien on all of the engines and parts that are the subject of this action, and has objected to any liquidation of them by Plaintiff (should Defendant fail to make payment pursuant to the terms of the settlement agreement).  (Dkt. Nos. 52, 53.)  Counsel for Defendant also notified counsel for Plaintiff that Defendant's insurance company would be willing to fund the settlement after an inspection of the engines and parts, and the making of a report of its findings to the bank.  (Dkt. Nos. 52, 53.)  Finally, counsel for Defendant advised that, by the close of business that day, counsel would obtain the available dates for the insurance company's inspection; however, counsel did not provide those dates to counsel for Plaintiff that day or on the following days.  (Dkt. Nos. 52, 53.)

Meanwhile, by Text Order dated November 13, 2013, the Court directed the parties to submit a status report with regard to the mediation and potential settlement of the case by November 20, 2013.  (Dkt. No. 50.)

On November 14, 2013, Mr. Hurteau filed a report with the Court stating that the case had been settled.  (Dkt. No. 51.)

On November 20, 2013, Plaintiff filed a status report stating that Defendant had not yet made any payments but that, because the parties had executed a settlement agreement, the Court should dismiss the action except to retain jurisdiction to enforce the term of the settlement agreement.  (Dkt. No. 53.)  Defendant filed a status report confirming that it had not made any payments but stating, inter alia, that the case should not be dismissed because the settlement agreement had been executed "imperfectly and, perhaps, in an unenforceable manner."  (Dkt. No. 52.)

4

At some point between November 20, 2013, and December 6, 2013, Plaintiff's counsel spoke to Defendant's counsel and was advised that, by the term "imperfectly" executed, Defendant's counsel meant that the authorized representatives had signed the settlement agreement on the wrong signature blocks.  (Dkt. No. 60, at ¶ 12.)

C.     **Parties' Arguments on Plaintiff's Motion for Voluntary Dismissal**

Generally, in support of its motion for voluntary dismissal, Plaintiff asserts the following four arguments: (1) generally, a motion for voluntary dismissal should be granted absent some showing of prejudice to defendant, and here no such showing has been made, because this case has been settled; (2) the settlement agreement is both valid and binding under the applicable law (i.e., New York contract law), because (a) it was in writing, (b) it resolved all outstanding claims, (c) it contained all material terms, including a merger clause, and (d) it was executed by representatives who had, or sufficiently represented to have, unfettered authority to settle the case, which the opposing party had no reason to doubt; (3) Defendant's argument that the settlement agreement is unenforceable because the parties' authorized representatives signed on the wrong signature blocks is unavailing, because such an error is immaterial to the substance of the settlement agreement, to which there was a clearly demonstrated meeting of the minds; and (4) the fact that a settlement agreement may turn out to be onerous or unfavorable to a party does not render it unenforceable.  (Dkt. No. 57.)

Generally, in opposition to Plaintiff's motion, Defendant asserts the following five arguments for why the settlement agreement is unenforceable: (1) Defendant's representative, Mike Smith, negotiated outside of the parameters given to him by Defendant's president, Bill Acor; (2) while it was represented to Defendant that Attorney Foont was authorized by Plaintiff to resolve the matter, no written statement of authority was provided to Defendant; (3) the

settlement agreement was "mis-signed" by the parties; (4) at the time of contract formation, the payment and inspection schedules were difficult to comply with, given Mr. Acor's travel schedule, the need to bring persons to Montreal for an inspection, and the lien held on the engines in question by Defendant's lending back; and (5) the doctrines of waiver and/or estoppel apply because, when Defendant informed Plaintiff that it could not meet the contractual deadlines, "no specific action was taken by Plaintiff to enforcement the agreement and cause forfeitures of fights." (Dkt. No. 69, at ¶¶ 3-11.)[1]

Generally, in reply to Defendant's opposition, Plaintiff asserts the following seven arguments: (1) Defendant's opposition fails to assert any argument that the settlement agreement is unenforceable; (2) for example, Mr. Foont was conferred valid settlement authority, and he represented that fact to Defendant before the mediation; (3) even if the conferral of that settlement authority was in some way flawed, Plaintiff is currently seeking to enforce, not renounce, that settlement agreement, which amounts to ratification of the agreement; (4) moreover, Defendant does not provide sufficient evidence to prove that fulfilling its obligations under the settlement agreement would be impossible; (5) indeed, Defendant has not shared with Plaintiff its particular assertions regarding its bank and insurer objecting to the settlement, nor has Plaintiff even taken the first step under the settlement agreement (i.e., making an unconditional payment of $50,000; (6) furthermore, Defendant's opposition fails to assert any grounds on which to conclude that it would be prejudiced by dismissal; and (7) finally, sending the parties back to mediation would not only be contrary to New York contract law but would actually undermine the mediation process. (Dkt. No. 72.)

---

[1]     The Court notes that, as expected, Mr. Ganz zealously made every credible legal argument available to Defendant under the circumstances.

## II.      GOVERNING LEGAL STANDARD

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides as follows, in pertinent part: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . .  Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."  Fed. R. Civ. P. 41(a)(2).

"Two lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper."  *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir.2006).  "One line indicates that such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  *Camilli*, 436 F.3d at 123 (internal quotation marks omitted).  In this context, "plain legal prejudice" is defined as "the plight of a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed" (for example, where "the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action").  *Id.* at 124.

"Another line indicates that the test for dismissal without prejudice involves consideration of various factors, . . . including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss."  *Id.* at 123.

### III.   ANALYSIS

After carefully considering the matter, the Court grant's Plaintiff's motion for the reasons stated in Plaintiff's memoranda of law.  *See, supra,* Part I.C. of this Decision and Order.  The Court would add eight points.

First, with regard to Defendant's argument about its representative's settlement parameters, whether a party's representative negotiated a settlement agreement outside of the parameters given to him by the party is generally immaterial to a settlement agreement's enforceability, where the representative was acting with apparent authority (i.e., the opposing party had no objective reason to believe that the representative was acting outside the scope of his or her authority).  *See Graphic Commc'ns Int'l Union v. Case-Hoyt Corp.*, 95-CV-1624, 1997 WL 610765, at *6 (N.D.N.Y. Sept. 25, 1997) (Pooler, J.) ("Case-Hoyt does not attempt to argue that the union negotiators had any objective reason to believe that Whitman and Cotton were acting outside the scope of their authority during the settlement negotiations. Because there is no issue of material fact regarding the bases on which to find apparent authority, the Florack settlement agreement is enforceable.").  Here, the following facts are undisputed: (1) Defendant's Memorandum for Mediation (submitted to the mediator only) identified Mike Smith as a person expected to attend the mediation with full settlement authority; (2) Mr. Smith attended the mediation session, along with Plaintiff's counsel; (3) Mr. Smith was Defendant's Vice President of Maintenance; (4) before and/or during the mediation, Mr. Smith represented that he possessed unfettered authority to settle the case, in accordance with Local Rule 83.11-5(b); (5) during the mediation, Mr. Smith conferred with Bill Acor once by telephone; and (6) both Plaintiff and the mediator believed Mr. Smith to be acting with valid settlement authority, and relied on that fact.  (Dkt. No. 51; Dkt. No. 53; Dkt. No. 60, at ¶ 6; Dkt. No. 60, Attach. 1, at

4; Dkt. No. 69, at ¶ 7; Dkt. No. 71; Dkt. No. 72, Attach. 1.)  As a result, the Court finds that, at

the very least, Mr. Smith was acting with apparent authority.

Second, Defendant's argument that Plaintiff's representative did not have "a written

statement of authority" is unavailing.  Local Rule 83.11-5 requires only (a) a Memorandum for

Mediation identifying, in pertinent part, each person expected to attend the mediation and each

person who has full settlement authority, and (b) the attendance of an individual with authority to

settle the lawsuit.  N.D.N.Y. L.R. 83.11-5(a),(b).  Here, the following facts are undisputed: (1)

while Plaintiff's Memorandum for Mediation (submitted to the mediator only) did not identify

Brian Foont as a person expected to attend the mediation with full settlement authority, the office

of Plaintiff's Chief Restructuring Officer (who could not attend the mediation due to a court

appearance in Montreal the same day as the mediation)[2] specifically authorized Mr. Foont to

appear at the mediation on Plaintiff's behalf and act with full settlement authority; (2) Mr. Foont

(who was counsel to Plaintiff) attended the mediation session, along with his co-counsel, John

Maggio; (3) before the mediation started, Mr. Foont informed Defendant that he possessed

unfettered authority to settle the case, in accordance with Local Rule 83.11-5(b); (4) during the

mediation, Mr. Foont communicated the settlement terms to, and confirmed those terms with, the

office of the Chief Restructuring Officer; (5) the mediator believed Mr. Foont to be acting with

valid settlement authority; and (6) with regard to whether Defendant believed Mr. Foont to be

acting with valid settlement authority, that belief was (at the very least) sufficient enough for

Defendant to negotiate 13 paragraphs of terms with Mr. Foont and sign a settlement agreement

with him.  (Dkt. No. 53; Dkt. No. 60, at ¶ 6; Dkt. No. 60, Attach. 1, at 4; Dkt. No. 69, at ¶ 6; Dkt.

No. 72, at 2.)  As a result, the Court finds that Mr. Foont was acting with sufficient authority.

---

[2]     Plaintiff's Chief Operating Office was appointed by the Quebec Superior Court to
operate Plaintiff while in liquidation.

Third, with regard to Defendant's argument about the agreement's signature blocks, generally, signing on the wrong signature block of an agreement does not invalidate that agreement. *Cf. Lakeview Outlets, Inc. v. Uram*, 95-CV-0136, 1996 WL 571520, at *4, n.14 (N.D.N.Y. Oct. 2, 1996) (McCurn, J.) ("Mr. Uram had inadvertently signed [the lease] on the wrong line . . . . [E]ven though the signature lines are transposed, Mr. Uram did sign in his corporate capacity on behalf of Fashion Factory . . . ."). Defendant does not even suggest that the parties' representatives were confused about their respective roles in the mediation (much less the express terms of the settlement agreement).

Fourth, with regard to Defendant's argument about the difficulty of performance, the difficulty or even improbability of performance does not relieve a party of its obligations under an agreement. *See Standard Oil Co. of New York v. Central Dredging*, 233 N.Y.S. 279, 282 (N.Y. App. Div., 3d Dept., 1929) ("Difficulty or even improbability of accomplishment without great financial loss will not release an obligor."); *cf. Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect."). As for any argument that performance was i*mpossible*, the Court will not linger on the fact that the purported impossibility was due solely to Defendant's own conduct (and should have been known by Defendant at the time of formation). *See AMF, Inc. v. Cattalani*, 430 N.Y.S.2d 731, 733 (N.Y. App. Div., 4th Dept. 1980) ("The situation allegedly making performance impossible, viz., Doncat's eviction, was created by Doncat's own conduct; Doncat, therefore, is not relieved of its duty to perform . . . ."); *Ward v. Melis*, 859 N.Y.S. 900, at *4 (N.Y. Sup. Ct., Sullivan Cnty. 2004) ("It is basic contract law that one who prevents or makes impossible the performance of a contract cannot take advantage of its non-performance."). More important is the fact that (1) the lien in no way made it impossible for Defendant to make the required

payments, and (2) in any event, the lien does not actually make the interest forfeiture impossible, because the agreement causes merely *Defendant* (not the bank) to forfeit its interest in the engines and parts (in the event Defendant fails to make the required payments).

Fifth, with regard to Defendant's argument about the doctrines of waiver and/or estoppel, Defendant cites no legal authority for the point of law that Plaintiff has waived its right to enforce the settlement agreement, or is estopped from enforcing that settlement agreement, because it failed to act after Defendant anticipatorily repudiated the settlement agreement. Indeed, generally, a non-repudiating party retains the right to bring an action against the repudiating party, regardless of whether the non-repudiating party encourages the repudiating party to withdraw the repudiation or it remains silent on the issue. *See* Restatement (Second) of Contracts § 257 (1981) ("The injured party does not change the effect of a repudiation by urging the repudiator to perform in spite of his repudiation or to retract his repudiation."). The Court notes that, under the settlement, no specific action need be taken by Plaintiff when Defendant fails to meet its contractual deadlines. (*See generally* Dkt. No. 58, Attach. 1.)

Sixth, under the "plain legal prejudice" standard identified above in Part II of this Decision and Order, the Court finds no such plain legal prejudice. Defendant has asserted no counterclaim that would be harmed by a dismissal of Plaintiff's Complaint and retention of jurisdiction to enforce the parties' settlement agreement. (Dkt. No. 6 [Def.'s Answer].) Moreover, "[t]he merits of a hypothetical second lawsuit are not relevant to the question of whether dismissal without prejudice would impose a 'plain legal prejudice' . . . ." *NAACP New York State Conference v. New York State Bd. of Elect.*, 10-CV-2950, 2012 WL 3288850, at *2

(E.D.N.Y. Aug. 9, 2012).[3]  In any event, Defendant has merely provided grounds to conclude that the settlement agreement is unfavorable to Defendant, not that the agreement is unenforceable.

At the time the settlement agreement was executed, the bank's purported security lien (of which Defendant should have known) could not even become problematic to Defendant unless Defendant *breached* the agreement by failing to make the required payments; furthermore, that issue could be resolved by a timely claim by the bank (including through intervention in the current proceeding, which has not occurred).  Indeed, it is difficult for the Court to conclude that the lien is in any way material to the agreement, which (again) causes merely Defendant (not the bank) to forfeit its interest in the engines and parts (in the event that Defendant does not pay the required amounts).  The Court reaches a similar conclusion with regard to the claims process established by Defendant's insurer: the process should have been known by Defendant at the time of the settlement, it should have been complied with in a timely fashion by Defendant following the settlement, and in any event it is immaterial to the terms of the agreement.

Seventh, under the five-factor test identified above in Part II of this Decision and Order, the Court finds that those factors weigh decidedly in favor of dismissal.  Plaintiff was diligent in first requesting to voluntarily dismiss the claims against Defendant on November 20, 2013, only 30 days after the parties executed their settlement agreement on October 21, 2013.  The Court cannot find any undue vexatiousness committed by Plaintiff, or even asserted by Defendant.

---

[3]     *Cf. SmithKline Beecham Corp. v. Pentech Pharm., Inc.*, 261 F. Supp.2d 1002, 1006 (N.D. Ill. 2003) ("[I]nconsistently [a nonparty] bases its opposition to [plaintiff's] motion to [voluntarily] dismiss not on any . . . 'plain legal prejudice' *from the dismissal of the suit* but on the alleged illegality of the settlement agreement that motivated the motion.") (emphasis in original).

Moreover, the Court does not find that the lawsuit has progressed to a stage by which any findings have been made concerning the merits, or by which the parties have filed pretrial motions in limine, proposed jury instructions, etc.  Similarly, the Court does not find that there would be duplicative expenses during a second proceeding, the scope of which would appear to be more limited than the scope of the current proceeding.  Finally, Plaintiff's explanation of the need to dismiss is adequate: in light of its settlement with Defendant, there is no need to proceed with its breach-of-contract claim against Defendant, who have agreed to settle the case.  The Court notes that the Eastern District of New York has granted a motion to voluntarily dismiss an action under analogous circumstances. *See NAACP New York State Conference*, 2012 WL 3288850, at *2 (applying five-factor test in granting plaintiff's motion to voluntarily dismiss the action without prejudice to refiling in the event defendant refuses to comply with the parties' settlement agreement).

Eighth, this Decision and Order is in no way meant to disparage defense counsel's fine work in this litigation.  Rather, it is his client that has brought about this dismissal through entering into a settlement agreement (and then failing to perform).  The Court understands the reason for defense counsel's request for an Order directing the parties to submit to further mediation in order to work through various issues that have arisen (including the funding of the settlement through Defendant's insurer, and the assertion of lien rights by Defendant's bank).  However, granting such a request would require the Court to set aside a valid and enforceable settlement agreement merely so that Defendant has more time to do something that it has been able, but apparently unwilling, to do for some 12 weeks now (i.e., either [1] pay Plaintiff the agreed-upon amount while seeking reimbursement from its insurer and permitting the bank to assert its rights, or [2] persuade Plaintiff to amend the settlement agreement such that Plaintiff

13

will forgo forfeiture of the various engines and parts for an additional sum of money).  Simply

stated, the Court finds such an Order to be repugnant to both the law and justice.

ACCORDINGLY, it is

ORDERED that Plaintiff's motion to voluntarily dismiss its Complaint and retain

jurisdiction to enforce the parties' settlement agreement, pursuant to Fed. R. Civ. P. 41(a)(2).

(Dkt. No. 57), is **GRANTED**.  The Court retains jurisdiction of this action to enforce the parties'

settlement agreement of October 21, 2013.

Dated: January 13, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge